UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAULA S. ALLEN,

Plaintiff,

-v- 7:08-CV-650

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP
Attorneys for Plaintiff
307 State Street
Carthage, NY 13619

LAWRENCE D. HASSELER, ESQ.

OFFICE OF REGIONAL GENERAL COUNSEL
SOCIAL SECURITY ADMIN. REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

SHEENA V. WILLIAMS-BARR, ESQ.

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

This matter is brought pursuant to §§ 205(g) & 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits and Supplemental Security Income. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Paula Allen ("plaintiff" or "Allen") filed an application for Disability Insurance Benefits and Supplemental Security Income payments on February 27, 2004, claiming a period of disability beginning on August 7, 2002. Her claim was denied on April 27, 2004.

Plaintiff filed a request for a hearing on June 25, 2004. On June 7, 2005, the Administrative Law Judge ("ALJ") granted plaintiff's request to postpone the proceeding to allow her to obtain additional medical evidence and consult a representative. The hearing was recommenced on October 3, 2005. The ALJ rendered a decision on March 31, 2006, denying plaintiff's claims.

Plaintiff appealed the ALJ's decision to the Appeals Council. On June 13, 2008, the Appeals Council issued an order denying plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the instant complaint in the district court on June 20, 2008.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217

(1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). Even if the record supports contrary findings on particular issues, "the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "and that there is good cause for the failure to incorporate such evidence into the record" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643–44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g),

as amended in 1980). Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

**B. Disability Determination—The Five-Step Evaluation Process**

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluative process to determine whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ must

determine whether the claimant is engaged in substantial gainful activity. If so, she is not disabled, and she is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether she has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires the ALJ to determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). When determining the appropriate RFC, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id. The ALJ should consider the following six factors, none of which is dispositive, when determining what weight to accord treating, consulting, and non-examining sources: (1) the examining relationship; (2) the length and nature of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(d).

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that the claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine "whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404.1567(a)). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an unfavorable decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

**C. Analysis**

The ALJ first determined that although plaintiff works part-time as a driver for disabled persons, she had not engaged in substantial gainful activity since August 7, 2002. The ALJ next found that plaintiff's back disorder, history of renal stones, recurrent lower extremity edema, and obesity were severe impairments that did not meet or equal those listed in the regulations. Subsequently, the ALJ determined that Allen had the RFC to lift and

carry what would be expected at the “light level”—lifting no more than 20 pounds at a time or carrying objects weighing up to ten pounds frequently. The ALJ claimed that plaintiff should be permitted to sit/stand with the opportunity to change position every 30 minutes and avoid activities requiring more than occasional climbing, stooping, crouching, and crawling. The ALJ further noted that plaintiff’s stated pain and discomfort did not preclude her from performing a significant amount of light and sedentary work because she was able to hear, speak, travel, lift, handle, and carry objects without significant limitations, and perform a wide variety of daily activities.

Based on this RFC, it was found that plaintiff could not perform her past relevant work—which was at the light/medium exertional level. Therefore, the process reached step five, at which the ALJ concluded that although Allen’s exertional limitations did not permit her to perform the full range of light work, there were significant numbers of jobs in the national economy that she could perform (i.e. office clerk, receptionist, and eligibility interviewer). Accordingly, the ALJ found that Allen was not disabled.

Plaintiff argues that the ALJ failed to properly assess the severity of her sleep apnea, evaluate the medical opinions in the record, credit her complaints of pain, and determine the RFC. Plaintiff also maintains that there was insufficient substantial evidence in the record to support the ALJ’s determination that significant work exists in the national economy that she could perform.

**1. Assessment of Plaintiff’s Sleep Apnea**

Plaintiff asserts that the ALJ failed to properly assess the severity of her sleep apnea and its impact on her functioning. An impairment is “severe” if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). When making a severity

determination, the ALJ is to rely on the medical evidence alone and cannot consider the claimant's age, education, or work experience. Id. §§ 404.1520(c), 416.920(c); Miller v. Astrue, No. 3:07-CV-1093, 2009 WL 2568571, at *10 (N.D.N.Y. Aug. 19, 2009) (Kahn, J. and Bianchini, M.J.).

At the hearing, plaintiff testified that she was terminated from her prior employment because she fell asleep at her desk and could not concentrate or work quickly enough. R. 393–94. Further, Allen advised that she occasionally becomes drowsy and "dozy" while working as a part-time driver[1] and sometimes falls asleep during the day for a period of minutes or up to an hour. Id. at 395–96. This testimony clearly concerns plaintiff's work experience and therefore cannot be considered in the severity assessment.

It cannot be argued that the ALJ ignored or disregarded the medical evidence concerning Allen's sleep disorder. While the ALJ did not provide a detailed explanation as to why plaintiff's sleep apnea was not found to be a severe impairment, it does not follow that he failed to properly assess this condition. In his written decision, the ALJ makes several references to plaintiff's sleep apnea. He pointed out that Dr. Ganesh diagnosed Allen with sleep apnea in March 2004 and opined that her prognosis was "stable." Id. at 18.

Moreover, the ALJ relied in part on the opinion of the impartial medical expert, Dr. Alexander. Dr. Alexander reviewed the medical record, questioned plaintiff at the hearing about her use of a continuous positive airway pressure ("CPAP") machine that was prescribed for sleep apnea, and concluded that her overall physical condition did not meet or equal any of the impairments listed in the regulations. Id. at 19, 407–08, 412–13. Dr.

[1] Plaintiff advised that when this happens she rolls down the window or pulls over and gets out of the vehicle to get some air. Id. at 395.

Alexander's testimony suggests that plaintiff's sleep apnea was not severe because it could be controlled if she stopped smoking and used the CPAP device properly. See id. at 407–08, 412–13 (noting that 95% of patients who use CPAP devices see an improvement in symptoms).[2] This is supported by the notes of Dr. Rechlin, who treated Allen for sleep apnea in 2002. In a June 25, 2002, phone conversation with Dr. Rechlin, plaintiff claimed that she "sleeps fairly well" if the CPAP mask stays in place. Id. at 113. In December 2004 plaintiff informed Dr. Withington that while the initial CPAP machine she was provided gave her significant relief, her insurance replaced it with a device that she could not adjust properly—so she stopped using it altogether. Id. at 292. Further, plaintiff repeatedly admitted to smoking at least one-half to three-quarters of a pack of cigarettes a day despite advice from her physicians that she stop smoking. See id. at 121, 142, 408.

Accordingly, the medical evidence in the record and the testimony of Dr. Alexander constitute substantial evidence supporting the ALJ's determination that Allen's sleep apnea was not a severe impairment on her physical ability to perform basic work activities.

**2. Assessment of Medical Evidence**

Plaintiff contends that the ALJ failed to properly take into account the medical opinions of Dr. Withington and nurse practitioner Jane Sweeney. Dr. Withington examined plaintiff twice in December 2004 and concluded that she was "unemployable" but may become employable as a "sitter" at the local hospital following "some vigorous therapy and a turn-around in her program." Id. at 291. While the ALJ must consider this opinion, "[a]

[2] Under 20 C.F.R. § 404.1530, a claimant will not be deemed disabled if she fails to follow prescribed treatment that can restore her ability to work.

treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ considered Dr. Withington's evaluation but assigned it "little weight in the determination of the claimant's residual functional capacity." Id. at 23. The ALJ claimed that it was unclear whether Dr. Withington was referring to all types of jobs or just plaintiff's prior job when he deemed her "unemployable." Id. Further, in the very next sentence Dr. Withington remained optimistic that Allen may become employable and vowed to reevaluate her progress in eight weeks. Id. at 291. This cannot mandate a finding that plaintiff was disabled within the meaning of the Social Security Act, which requires an impairment to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

Assuming arguendo that Dr. Withington was a "treating physician," the ALJ was justified in not affording his opinion controlling weight as it was inconsistent with other substantial evidence in the record. Allen admitted that she is able to perform a wide variety of daily activities, social functioning, and maintain a productive lifestyle while working 20 hours per week. R. 23. Dr. Van Eenenaam, a treating physician, noted that although Allen was "not capable of doing work that requires heavy lifting or repetitive bending or stooping," she "[c]ould do sedentary work." Id. at 154. Dr. Alexander, although merely a consulting medical expert, reviewed plaintiff's entire medical record, listened to her testimony, questioned her briefly, and determined that she was not disabled. Id. at 412–16. Accordingly, the ALJ did not err in giving "little weight" to Dr. Withington's opinion.

Plaintiff's assertion that the ALJ failed to consider Ms. Sweeney's report is also wrong. Ms. Sweeney completed a medical report in October 2005 which found that during an eight-hour workday plaintiff was capable of sitting for two hours, standing for three hours,

and walking for three hours.[3] Id. at 322. Ms. Sweeney also noted that plaintiff could only "occasionally" stoop, crouch, kneel, and crawl. Id. at 323.

In his written decision, the ALJ acknowledged Ms. Sweeney's October 2005 assessment. Id. at 19, 22. The ALJ also referred to Dr. Alexander's opinion that Allen could sit for six hours, stand for three hours, and walk for two hours in a workday. Id. at 19. Additionally, Dr. Ganesh reported that plaintiff had no physical limitations when sitting, standing, or walking. Id. at 22. After considering these assessments, the ALJ found that plaintiff should be permitted to sit/stand with the option to change position every 30 minutes and avoid activities requiring more than occasional climbing, stooping, crouching, and crawling. While plaintiff is correct that the ALJ did not assign any specific weight to Ms. Sweeney's opinion, his findings were consistent with her assessment. Accordingly, there was no error regarding the ALJ's consideration of Ms. Sweeney's report.

**3. Credibility Assessment**

Although the ALJ is required to consider plaintiff's reports of pain and other limitations when determining the RFC, he may use discretion when weighing the credibility of such subjective complaints. Genier, 606 F.3d at 49. When evaluating a claimant's assertions of pain and other limitations, the ALJ must utilize a two-step approach as outlined in the regulations. Id. First, it must be determined "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id.; 20 C.F.R. § 404.1529(b). If so, the ALJ must then consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the

[3] Ms. Sweeney was "unable to assess" plaintiff's ability to lift, carry, climb, push, or pull. Id. at 321, 323.

objective medical evidence and other evidence" in the record. Genier, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(b)). "It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). As long as the ALJ's decision to discredit the claimant's subjective complaints is supported by substantial evidence, that decision must be upheld. Id.

The ALJ found that Allen suffered from medically determinable impairments, namely a back disorder, a history of renal stones, recurrent lower extremity edema, and obesity. R. 19. He then determined that plaintiff's complaints of debilitating pain were inconsistent with the record and were therefore not credible. Id. at 22. This decision was supported by evidence of plaintiff's ability to work 20 hours per week as a driver, operate a motor vehicle, complete household chores, help her children prepare for school, grocery shop, attend to personal needs and hygiene, visits friends and relatives, garden, care for her cats, and manage her finances. Further, as noted above, the record indicates that Allen is able to see, hear, speak, travel, sit, stand, walk, and lift and carry objects without significant limitation. Both Dr. Ganesh and Dr. Alexander found that plaintiff had full range of motion in her extremities.[4]

This collection of testimony and reports contradicts plaintiff's assertion that she was completely disabled by pain. Accordingly, the ALJ's decision to discredit Allen's subjective assessment of her limitations was supported by substantial evidence in the record.

---

4 [illegible]

**4. Residual Functional Capacity Determination**

Plaintiff argues that the ALJ's RFC determination was flawed because: (1) it is unclear what is meant by his finding that Allen can perform a significant amount of work at both the sedentary and light levels; (2) it failed to provide a function-by-function assessment of plaintiff's work-related abilities; (3) it failed to take into account the impact of her sleep disorder; (4) it failed to take into account the impact of her past renal stones; (5) it did not accord sufficient weight to the opinions of Dr. Withington and nurse practioner Sweeney; and (6) it is contradictory, in that Allen cannot perform sedentary work if she also has to change positions every 30 minutes and avoid stooping. Because it has already been determined that plaintiff's sleep disorder as well as Dr. Withington's and Ms. Sweeney's opinions were properly considered by the ALJ during the disability evaluation process, the third and fifth arguments will not be addressed again here.

First, plaintiff's suggestion that the ALJ erred in finding that she can perform a combination of light and sedentary work is wrong. The defendant properly points out that Social Security Ruling 83-12 addresses this exact situation. Where, as here, a claimant's exertional capacity does not coincide with the full range of work in the appropriate level, guidance from a vocational expert is "advisable." SSR 83-12, 1983 WL 31253. The ALJ found that Allen's ability to perform a full range of light work was "impeded by additional exertional and/or non-exertional limitations" and therefore sought the guidance of a vocational expert. R. 25. Thus, the ALJ followed the appropriate process and properly concluded that while plaintiff could not perform a full range of light work, she was able to perform a significant amount of both light and sedentary work.

Next, plaintiff's contention that the ALJ failed to provide a function-by-function assessment of her work-related abilities is incorrect. The written decision clearly states that plaintiff "retains the residual functional capacity to lift and/or carry what would be expected at the light level." Id. at 24. On the very next page, the ALJ explains that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Id. He further notes that plaintiff should avoid activities requiring more than occasional climbing, stooping, crouching, and crawling. Id. As previously explained, these findings were adequately supported by substantial evidence in the form of plaintiff's admissions and the medical reports in the record. Accordingly, the ALJ properly articulated a function-by-function assessment of plaintiff's abilities.

Plaintiff's assertion that the ALJ failed to consider her history of renal stones is equally misplaced. Plaintiff testified that she was treated by Dr. Sherman for her kidney stones—of which she has had only two, one in 2003 and one at the time of the hearing in 2005. Id. at 401. However, the ALJ could not possibly glean any information concerning Allen's kidney ailment from Dr. Sherman's report. Indeed, Dr. Sherman was unable to provide information regarding plaintiff's current symptoms, renal function, associated disorders, limitation on physical activity, or work-related abilities because he had not seen Allen since June 2003 as she had "not kept follow-up visits." Id. at 133–36. Therefore, the ALJ had to rely on opinions from other providers and from the plaintiff's testimony. As has been repeatedly noted, the ALJ's RFC assessment was based on substantial evidence in the record. The ALJ considered and drew from medical reports of various doctors who treated plaintiff for a wide array of ailments and noted her history of kidney stones. Moreover, plaintiff's testimony regarding her history of kidney stones was brief and did not provide a

detailed explanation of her symptoms or how the kidney stones impacted her work-related abilities. See id. at 400–01. Thus, the ALJ did not commit any error regarding his assessment of Allen's history of renal stones.

Finally, plaintiff maintains that the need for a sit/stand option is inconsistent with the determination that she is capable of sedentary work. In order to perform a full range of sedentary work, a person must be able to sit for approximately six hours in an eight-hour workday, with morning, lunch, and afternoon breaks at approximately two-hour intervals. Weiss v. Astrue, No. 1:07-CV-1039, 2009 WL 2843249, at *8 (N.D.N.Y. Aug. 31, 2009) (Kahn, J. and Bianchini, M.J.) (quoting SSR 96-9p). Plaintiff correctly notes that if a claimant is unable to sit for six hours in an eight-hour workday, "the unskilled sedentary occupational base will be eroded." Id. However, a vocational expert may be consulted to determine whether a particular claimant is able to make an adjustment to this type of work. Id.

Here, Dr. Van Eenenaam claimed that plaintiff was capable of performing sedentary work. Dr. Ganesh found no limitations on plaintiff's ability to sit, stand, and walk. Dr. Alexander and the state agency consultant agreed that plaintiff was able to sit for six hours in an eight-hour workday but should be provided with a sit/stand option every 30 minutes. Because the ALJ found that plaintiff had "additional exertional and/or non-exertional limitations," a vocational expert was consulted. The vocational expert reviewed the record, was present for Dr. Alexander's hearing testimony, and concluded that plaintiff's skills, limitations, and abilities allow her to adjust to the requirements of various sedentary jobs. Based on these reports and opinions, the ALJ determined that Allen could perform a significant amount of sedentary work in the national economy. This determination was reached through the proper process and is supported by substantial evidence.

Plaintiff's assertion that her need to avoid more than occasional stooping limits her ability to perform sedentary work is also unpersuasive. Only a complete inability to stoop would seriously erode the sedentary occupational base. See SSR 96-9p, 1996 WL 374185, at *8 (restriction to occasional stooping only minimally erodes sedentary work base). Here, the RFC determination, which was supported by substantial evidence, merely limited plaintiff to "occasional" stooping. This does not prevent her from performing a significant amount of sedentary work.

**5. Significant Work in the National Economy**

Plaintiff's final argument is that the ALJ erred in determining that there was significant work in the national economy that she could perform. Plaintiff points to the testimony of the vocational expert, who, when questioned by plaintiff's counsel, acknowledged that she would be unable to perform any jobs if "for whatever reason" she would be unpredictably unproductive three times per day for a period of ten minutes each. Allen asserts that the medical record "suggests" that she may suffer such periods of "unproductivity" due to her impairments. However, plaintiff merely cites the "medical evidence generally" to support this claim. No medical provider documented or testified to the possibility that Allen may become "unpredictably unproductive" three times a day for ten minutes. This argument once again calls into question the RFC determination, which has already been found to be supported by substantial medical evidence in the record.

## IV. CONCLUSION

The ALJ properly assessed all relevant medical reports and opinions, and considered the severity of plaintiff's sleep apnea and history of kidney stones. The ALJ's decision to accord little weight to Dr. Withington's assessment was proper in light of the fact

that he only met with plaintiff twice and his opinion was in conflict with other substantial evidence in the record. Moreover, the ALJ was justified in discrediting plaintiff's subjective complaints of pain and limitations as they were similarly inconsistent with the objective evidence. Finally, the ALJ applied the appropriate legal standards, sought guidance from a medical and vocational expert at pertinent times, and properly relied on substantial evidence when determining the RFC.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

United States District Judge

Dated: December 14, 2010
Utica, New York.